FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| |
|---|
| In re:<br><br>FELIX POLANCO,<br><br>            Debtor. |
| FELIX POLANCO,<br><br>            Plaintiff,<br><br>v.<br><br>CITY OF CAMDEN,<br><br>            Defendant. |

Case No. 19-31409 (JNP)

Chapter 13

Adv. Pro. No. 20-01370

Judge: Jerrold N. Poslusny, Jr.

## MEMORANDUM DECISION

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

Felix Polanco (the "Debtor") filed an adversary complaint (the "Adversary Complaint"), bringing claims against the City of Camden ("Camden"), pursuant to sections 547 and 548 of Title 11 of the United States Code (the "Bankruptcy Code"). Dkt. No. 1. The Debtor seeks to avoid the transfers of seven properties (the "Properties") to Camden completed pursuant to a tax foreclosure judgment.[1] The Debtor has filed a motion for summary judgment (the "Motion") on both counts of the Adversary Complaint, and Camden has filed an opposition to the Motion which included a cross-motion (the "Cross-Motion") for summary judgment on the preference count only.

The primary issue in this matter is whether filing a <u>lis pendens</u> related to a tax foreclosure action prior to the preference period, prevents a trustee from prevailing on a preference action

---

[1] Although the Adversary Complaint brings both claims under a single count, the Court will treat these as two separate counts.

when title to the property is transferred within the preference period. See 11 U.S.C. § 547. Because the Court finds that the transfer relates back to the filing of the lis pendens, the Debtor cannot prevail on his preference action. For that reason, and other reasons discussed below, the Court will deny the Motion and grant the Cross-Motion as to the preference count. The Court will also deny the Motion with respect to the fraudulent transfer count because there is a material dispute related to the values of the Properties.

### Jurisdiction

This Court has jurisdiction under 28 U.S.C. §§ 157(b)(1) and 1334(b). Venue is proper in this Court under 28 U.S.C. § 1410. This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (E), (F) and (H).

### Background

On June 20, 2019,[2] Camden filed a complaint under New Jersey's in rem tax foreclosure statute ("Foreclosure Complaint"), see N.J.S.A. 54:5-104.29, et. seq., seeking to foreclose on twenty-three properties, only some of which were owned by the Debtor, the remaining properties were owned by other defendants (the "Non-Debtors"). The Debtor was named as a defendant having an interest in twelve of those properties, including the seven Properties at issue in this adversary proceeding.[3] Dkt. No. 5. Camden filed a lis pendens in accordance with New Jersey law by filing a copy of the Foreclosure Complaint with the Camden County Recording office on June

---

[2] Both the Adversary Complaint and Camden's answer, Dkt. No. 3, state the Foreclosure Complaint was filed on October 8, 2019. However, a copy of the Foreclosure Complaint attached as Exhibit D to the Cross-Motion shows the Foreclosure Complaint was filed on June 20. Dkt. No. 5. Counsel for Camden confirmed this during a hearing on September 8, 2020 (the "Hearing").

[3] The exact number of properties owned by the Debtor appears disputed. The Debtor stated that ten properties were transferred as a result of the Foreclosure Judgment. Dkt. No. 1; Hearing at 3:22. Camden argues it was twelve. The Foreclosure Judgment names the Debtor as holding an interest in twelve of the properties. Dkt. No. 5. As it is not material to this decision, the Court will assume for the present purposes that the Debtor held an interest in twelve of the transferred properties.

2

29, 2019. Id. Final judgment was entered on November 8, 2019 (the "Foreclosure Judgment") and filed with the county clerk on November 22, 2019. Dkt. No. 1. Upon the entry of the Foreclosure Judgment, title to the Properties vested with Camden. See In re Berley Assocs., Ltd., 492 B.R. 433, 441 (Bankr. D.N.J. 2013) (A New Jersey a tax sale certificate foreclosure is a "strict foreclosure," resulting in a straight transfer of title.)

The Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on November 13, 2019 (the "Petition Date"). Dkt. No. 1. As such, August 15, 2019 was the start of the 90-day preference lookback period (the "Preference Period"). 11 U.S.C. § 547(b)(4)(A). Shortly after the Petition Date the Debtor filed the Adversary Complaint seeking to avoid seven of the transfers pursuant to sections 547(b) and 548(a) of the Bankruptcy Code. Dkt. No. 1. The Adversary Complaint includes a chart (the "Chart") listing the alleged value and tax lien debt for each property.[4] Id. Camden's answer admits most of the facts laid out above, but not the alleged values of the Properties, the amount of tax lien debt, or the date of transfer. Dkt. No. 3.

The Motion argues that the Debtor has established all the elements necessary for summary judgment under both sections 547 and 548 of the Bankruptcy Code. Dkt. No. 4. The factual support for the Motion rests solely on the allegations made in the Adversary Complaint. Id. Although listing the values and claims for each individual property, the Motion treats the Foreclosure Judgment as a single transfer and argues that the total value of the Properties exceeds the tax debt owed on the Properties, making this a transfer for less than reasonably equivalent value. Id.

The Cross-Motion seeks summary judgment on the preference claim only and opposes the Motion related to the fraudulent transfer claim. Dkt. No. 5. The Cross-Motion argues several material facts are in dispute, including the value of the Properties, and the Debtor's insolvency at

---

[4] The Chart contains valuations for ten of the properties, including the Properties at issue in this case, but not the two additional properties Camden maintains were transferred from the Debtor. The Motion includes a second chart listing the claim amounts asserted against the Properties by Camden in the bankruptcy case but is otherwise substantially the same.

3

the time of the transfers. In support of its request for summary judgment, the Cross-Motion argues that, because Camden filed its lis pendens prior to the Preference Period, the Debtor cannot prevail on the preference claim. Id. Regarding the claim for fraudulent transfer, the Cross-Motion not only disputes the values of the Properties, but also argues the Debtor is improperly treating the Foreclosure Judgment as a single transfer of all the Properties and attempting to compare the total tax debt owed against all Properties to the total value of all the Properties. Camden argues each transfer must be considered individually to determine whether the tax debt against each property was reasonably equivalent to the value of that particular property foreclosed upon.

Both parties appeared at the Hearing and reiterated their arguments. The Court asked the parties to brief the issue of whether there was a single transfer of the Properties, or multiple separate transfers. Camden filed an additional brief, but the Debtor did not.

## Discussion

### A.    Summary Judgment Standard

The Court is asked to consider cross motions for summary judgment. Under Rule 56(a), made applicable by Bankruptcy Rule 7056, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 requires a court enter summary judgment if a party is unable to establish the existence of an element essential to that party's case as to which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In deciding a motion for summary judgment, the judge's function is not to weigh the evidence and determine the truth of the matter, but rather to determine if there is a genuine issue for trial." Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993). In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. In re Moran-Hernandez, 2016

WL 423705, at *2-3 (Bankr. D.N.J. Feb. 2, 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). A material fact is one that "might affect the outcome of the suit under the governing law." Id. "A dispute is genuine when it is 'triable,' that is, when reasonable minds could disagree on the result. Id. (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

Once the moving party establishes the absence of a genuine dispute of material fact the burden shifts to the non-moving party. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine dispute of material fact for trial. Id. (citing Fed. R. Civ. P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine [dispute] for trial")); see also Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).

The Motion seeks summary judgment under sections 547(b) and 548(a) of the Bankruptcy Code. The Cross-Motion seeks summary judgment exclusively on whether the Foreclosure Judgment was a preferential transfer under section 547 of the Bankruptcy Code and argues that the Debtor is not entitled to summary judgment under section 548 of the Bankruptcy Code. As such, the Court first considers the elements of the Debtor's preference claim to determine whether either party is entitled to judgment as a matter of law.

A.   Preference Action

Pursuant to section 547(b) of the Bankruptcy Code, a trustee, or here, the Debtor,[5] may avoid any transfer of an interest of the debtor in property that: (1) was to or for the benefit of a creditor; (2) was on account of an antecedent debt; (3) was made while the debtor was insolvent;[6] (4) was made within 90-days before the Petition Date (or one year for an insider); and (5) enabled the creditor to receive more than it would have under a Chapter 7 liquidation. See 11 U.S.C. § 547(b). The Debtor bears the burden of proof for each of these elements. See In re Bayonne Med. Ctr., 429 B.R. 152, 186 (Bankr. D.N.J. 2010). As noted above, if the Debtor is unable to establish one of these elements, the Court must grant summary judgment in favor of Camden. See Celotex, 477 U.S. at 322.

Beginning with the Motion, there are several material facts in dispute, including the value of the Properties. The Chart lists the Debtor's alleged values for the Properties, purportedly based on a comparative market analysis but, as noted, Camden disputes these valuations and has taken steps to obtain its own appraisals. Until those values are determined, the Debtor cannot establish that Camden received more than it would have under a Chapter 7 liquidation, as required by section 547(b)(5). Moreover, as discussed in detail below, the Debtor cannot establish the transfers occurred within the Preference Period. Therefore, the Debtor is not entitled to summary judgment and the Motion is denied regarding the preference count.

---

[5] The Third Circuit implicitly found that Chapter 13 debtors have standing to bring preference actions when it affirmed a bankruptcy court order granting summary judgment to Chapter 13 debtors who had brought a preference action to recover property transferred as part of a tax foreclosure in New Jersey. In re Hackler & Stelzle-Hackler, 938 F.3d 473, 477 (3d Cir. 2019).

[6] "[T]he debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." Hackler, 938 F.3d at 478 (quoting 11 U.S.C. § 547(f)).

6

The Cross-Motion argues the lis pendens perfected Camden's interest in the Properties pursuant to section 547(e)(1), and as such, the date of the transfers relates back to the date the lis pendens was filed, June 29, 2019, prior to the Preference Period. Therefore, Camden continues, the Debtor cannot establish the transfers occurred within 90-days prior to the Petition Date as required by section 547(b)(4).

Section 547(e)(1) of the Bankruptcy Code defines when a party has perfected its interest in property for purposes of a preference action. It states, in relevant part, "[f]or the purposes of this section, (A) a transfer of real property . . . is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1).

As such, the question is whether filing a lis pendens, under New Jersey law, grants the filer an interest that meets the requirements of section 547(e)(1). If so, then Camden's interest in the Properties was perfected when it filed its lis pendens. The New Jersey statute governing the effect of filing a notice of lis pendens states that:

> from and after the filing of a notice of lis pendens, any person claiming title to, interest in or lien upon the real estate described in the notice through any defendant in the action as to which the notice is filed shall be deemed to have acquired the same with knowledge of the pendency of the action, and shall be bound by any judgment entered therein . . . .

N.J.S.A. 2A:15-7 (emphasis added). The New Jersey Supreme Court has stated that "[t]he effect of the filing of a notice of lis pendens is constructive notice of a pending action concerning that real estate, and a purchaser or mortgagee takes subject to the outcome of the lawsuit." Trus Joist Corp. v. Treetop Assocs., Inc., 477 A.2d 817, 821 (N.J. 1984) (citing N.J.S.A. 2A:15–7) (emphasis added); see also Wells Fargo Bank, N.A. v. Leary, 2019 WL 4233846, at *3 (N.J. Super. Ct. App. Div. 2019). As another court in New Jersey described it, filing a notice of lis pendens gives the world notice that the party has an interest in the property "which will be deemed superior to all

subsequently obtained interests in the property." United Sav. & Loan Ass'n of Trenton, N. J. v. Scruggs, 436 A.2d 559, 561 (N.J. Super. Ch. 1981) (emphasis added). Therefore, the Court finds that the filing of a notice of lis pendens in New Jersey meets the requirements for perfection laid out in section 547(e)(1) of the Bankruptcy Code, and that Camden's interest was properly perfected, for preference purposes, prior to the Preference Period.

The vast majority of courts to consider this question have agreed with the above analysis, finding the filing of a lis pendens perfects a transferee's interest in property for purposes of section 547(e)(1), and that, in such circumstances, the date of transfer relates back to filing of the notice of lis pendens. See, e.g., In re Lane, 980 F.2d 601 (9th Cir. 1992) (filing a valid lis pendens was a transfer within the meaning of the Bankruptcy Code, thus judgment creditor's interest in property related back to filing of the lis pendens, which pre-dated the preference period); In re Whitehead, 399 B.R. 570 (Bankr. S.D. Fla. 2009) (although creditor did not obtain a lien on property by filing a lis pendens outside the preference period, he acquired an interest superior to that of a hypothetical future bona fide purchaser, such as the bankruptcy trustee); In re Medlin, 229 B.R. 353 (Bankr. E.D.N.C. 1998) (judgment entered during the 90-day preference period was not preferential because it related back to the date of filing of the lis pendens, eleven months before bankruptcy case was filed); In re Sandman, 2013 WL 3991971, at *4 (Bankr. W.D. Pa. Aug. 1, 2013); In re Simmons, 510 B.R. 76, 94 (Bankr. S.D. Miss. 2014) ("the filing of the Lis Pendens was a transfer as contemplated under § 547 because a bona fide purchaser 'cannot acquire an interest that is superior to the interest of [the defendant].'").

The fact that a lis pendens does not actually create a lien does not require a contrary result, because the concept of a "transfer" under the Bankruptcy Code is extremely broad and does not require the creation of a lien. Sandman, 2013 WL 3991971, at *4; see also Lane, 980 F.2d at 605 ("The Bankruptcy Code does not require the attachment of a lien in order to perfect an interest.").

The court in Sandman explained that, under Pennsylvania law, a lis pendens functions as notice to third persons that any interest they may acquire in the properties pending the litigation will be subject to the result of the action. 2013 WL 3991971, at *4 (citing Kohl v. PNC Bank Nat. Ass'n, 912 A.2d 237, 242 (Pa. 2006)). The filing of a lis pendens serves the same function under New Jersey law. See Scruggs, 436 A.2d at 561-62. "It is this notice function that 'trumps' the Trustee's status as a bona fide purchaser and enables a lis pendens to function as perfection of a transfer pursuant to Section 547(e)(1)(A)." Sandman, 2013 WL 3991971, at *4. The entry of a judgment during the preference period does not change this result. For purposes of a preference action, it "merely represent[s] formal confirmation of the existence of the transferred interest and [is] deemed to relate back to the date of the lis pendens." Id.

Applying this principle to the facts before the Court, the transfers of the Properties were perfected on the date the lis pendens was filed, June 20, 2019, which is outside of the Preference Period. Therefore, the Debtor cannot establish that the transfers occurred during the Preference Period, see 11 U.S.C. § 547(b), and Camden is entitled to judgment as a matter of law. As such, the Court will deny the portion of the Motion related to the preference count and will grant Camden's Cross-Motion. The transfers relate back to the filing of the lis pendens, which was prior to the Preference Period, and therefore, the transfers cannot be avoided as preferences.

B.     Fraudulent Transfer

The Debtor also seeks summary judgment on the fraudulent transfer count. Both the Adversary Complaint and the Motion fail to specify under which subsection of section 548(a) the Debtor has brought this claim, so the Court must consider each potential subsection to determine if the Debtor has established each element of a claim.

A claim for fraudulent transfer may be made under either section 548(a)(1)(A) or (B) of the Bankruptcy Code. 11 U.S.C. § 548(a)(1). Subsection (A) requires a showing of intentional

9

fraud. Because this was an involuntary transfer through a tax foreclosure, section 548(a)(1)(A) does not apply to this case.

A fraudulent transfer under section 548(a)(1)(B) permits the avoidance of any transfer if it was made on or within two years of a debtor's bankruptcy, and for which the debtor received less than a reasonably equivalent value. Jurista v. Amerinox Processing, Inc., 492 B.R. 707, 751–52 (D.N.J. 2013) (citing TSIC, Inc. v. Thalheimer, 428 B.R. 103, 109 (Bankr. D. Del. 2010)). In order to successfully establish a claim under this subsection of the statute, a party must demonstrate that:

> [B(i)] the transfer or obligation was incurred for less than reasonably equivalent value and then must show that one of the four conditions set forth in subsection (B)(ii) is met, including:
> (1) the debtor was or thereby became insolvent,
> (2) the debtor was engaged in business or was about to engage in business for which any property remaining with the debtor was an unreasonably small capital,
> (3) the debtor intended to incur or believed it would incur debts that would be beyond its ability to repay as they matured, or
> (4) the debtor made the transfer or incurred the obligation to or for the benefit of an insider under an employment contract and not in the ordinary course of business.

Id. (citing 11 U.S.C. § 548(a)(1)(B)(i), (ii)(I)–(IV)). Fraud upon creditors is presumed once the plaintiff establishes the requisite elements of the statute. Id. (citing Thalheimer, 428 B.R. at 109; In re Fruehauf Trailer Corp., 444 F.3d 203, 210 (3d Cir. 2006); Mellon Bank, N.A. v. Metro Commc'ns, Inc., 945 F.2d 635, 645 (3d Cir. 1991)).

### i. *Insolvency*

As noted, the Debtor did not present evidence related to insolvency at the time of the transfer. Therefore, the Debtor is not entitled to summary judgment because he has not met his burden of proof related to insolvency, and the Court will deny the Motion.

### ii. *Reasonably Equivalent Value*

Although the Court has found that the Debtor is not entitled to summary judgment on the fraudulent transfer count, there is an issue related to whether the Foreclosure Judgment resulted in

a transfer for less than reasonably equivalent value on which the Court can grant partial summary judgment. Specifically, whether the Foreclosure Judgment resulted in a single transfer, which would require the Court to evaluate the value of all of the Properties against all tax debt forgiven, or if it resulted in multiple transfers, requiring the Court to evaluate the value and debt exchanged for each individual property transferred.

The Debtor has alleged specific values and debts for each of the Properties at issue. The values of the Properties are disputed material facts, and another basis to deny the Motion. Moreover, even if the Court accepted the Debtor's alleged valuations, some of the Properties were worth less than the tax debt owed on them, implying that reasonably equivalent value was exchanged for those properties. The Debtor argues, however, that the Court should consider the Foreclosure Judgment as a single transfer of assets, and under that view, the total value of the Properties transferred was not reasonably equivalent to the debt owed. See Dkt. Nos. 1 and 4. Camden disputes not only the values alleged by the Debtor, but also argues that the Debtor is improperly treating the Foreclosure Judgment as a single transfer. Camden argues the Court should treat each property foreclosed upon as a separate transfer and consider whether the tax debt against each property was reasonably equivalent to the value of that individual property.

The Foreclosure Judgment resulted in the transfer of twenty-three properties, the Debtor held an interest in only twelve of them, and the remainder were held by Non-Debtors. See Dkt. No. 5. The Debtor is not attempting to avoid the transfer of the properties held by Non-Debtors and is only attempting to recover the seven Properties. The Court questioned the Debtor about this at the Hearing, specifically asking why, if the Foreclosure Judgment was a single transfer, the values and debts of all the Debtor's properties should not be considered to determine the total value exchanged in this transfer. The Debtor's response was that those properties held no value to the estate. Hearing at 3:38-3:39. The Debtor further argues that the Foreclosure Judgment should be

treated as a single transfer but allow the Debtor to avoid only certain parts of that transfer, specifically the Properties. The Court rejects this argument.

"Section 548 [of the Bankruptcy Code] speaks in terms of avoiding a 'transfer,' not part of a transfer, when there is not reasonably equivalent value." Stanley v. US Bank Nat'l Ass'n (In re TransTexas Gas Corp.), 597 F.3d 298, 308 n.3 (5th Cir. 2010) (emphasis added). As the court in Murray v. La. State Univ. Found. (In re Zohdi), explained, the Bankruptcy Code's "use of the singular is instructive when the question is whether a part of a transfer is not avoidable, because the singular is used to connote a self-contained whole thing." 234 B.R. 371, 376 n.8 (Bankr. M.D. La. 1999) (emphasis added) (explaining that section 102(7) of the Bankruptcy Code requires courts to read the singular "transfer" as plural, so while multiple transfers may be avoided, the use of the singular requires that only whole transfers may be avoided, not parts of transfers). Moreover, section 548 requires the Court to consider whether there was "reasonably equivalent value" exchanged for a given transfer. 11 U.S.C § 548(b)(1). "[T]o determine 'reasonably equivalent value' requires the court to determine the value of what was transferred and compare that value to the value the debtor received." In re Phillips, 379 B.R. 765, 779 (Bankr. N.D. Ill. 2007) (citing Barber v. Golden Seed Co., 129 F.3d 382, 387 (7th Cir. 1997)); see also BFP v. Resolution Trust Corp., 511 U.S. 531, 548 (1994).

Assuming the Foreclosure Judgment resulted in a single transfer, the Debtor is not permitted to avoid only the portion of the transfer related to the Properties, while leaving the remainder of the transfer intact. Moreover, if the Court were to treat the Foreclosure Judgment as a single transfer, then it would be necessary to consider the entire value transferred from the Debtor (i.e. the value of all of the properties transferred through the Foreclosure Judgment) and compare that to the total value received (i.e. the total amount of tax debt forgiven on all properties). See Phillips, 379 B.R. at 779. The Debtor's argument that the Court should treat the Foreclosure

Judgment as one single transfer, but only consider the value exchanged for some of the properties is not viable because it does not consider whether reasonable value was exchanged in the whole transfer. For example, if one of the remaining properties transferred had a tax debt of $1 million greater than its value, this would more than offset any excess value that exists in the seven Properties at issue in this adversary proceeding. Under those circumstances, the tax debt cancelled in that single transfer would be reasonably equivalent to the value of the properties transferred through the Foreclosure Judgment. Therefore, the Court rejects the Debtor's argument that the Court should treat the Foreclosure Judgment as a single transfer and allow the Debtor to avoid only part of that transfer.

Finally, after reviewing New Jersey state law, and the practical implications, the Court finds the Foreclosure Judgment resulted in multiple transfers as opposed to a single transfer. To begin, New Jersey law allows for multiple separate tax sale certificates to be foreclosed through a single complaint and that a single complaint may be against several distinct property owners. N.J.S.A. 54:5-104.35. Second, foreclosures of tax sale certificates are in rem proceedings, so that each tax certificate relates to the specific piece of real property against which it is held. N.J.S.A. 54:5-104.32; Central Penn National Bank v. Stonebridge Ltd., 448 A.2d 498, 504 (N.J. Super. Ch., 1982) (in rem proceedings grant relief only against the land itself). Further, the county recording officer is required to record a copy of any tax foreclosure complaint to be indexed in the county clerk's office along with other records of the specific property. See N.J.S.A. 54:5-104.44 and 2A:15-12. Also, if an answer as to a parcel or parcels of land is filed in response to a foreclosure complaint listing multiple properties, the action will be severed as to those parcels, and any fees or costs associated with the action are apportioned to the parcels added to the amount required to redeem those parcels. N.J.S.A. 54:5-104.58 and 54:5-104.59. All of this indicates that while

multiple properties may be foreclosed upon by filing a single complaint, New Jersey law still treats each parcel of a land as being a separate action and a separate transfer.

Moreover, the Court notes that treating the Foreclosure Judgment as a single transaction would lead to an absurd result. If this were a single transaction, the Court would be required to consider avoiding the transfer of all twenty-three properties, including those transferred from the Non-Debtors. However, the Court lacks jurisdiction over the transfers involving the Non-Debtors. See In re DVI, Inc., 324 B.R. 548, 553 (Bankr. D. Del. 2005) (court lacks jurisdiction over disputes between third parties over property that is not part of the estate). The result would be that the Debtor, or any debtor or trustee under similar circumstances, would not be able to avoid any transfer resulting from a tax foreclosure upon properties which included non-debtors.

In sum, the Debtor has failed to establish that he was insolvent at the time of the transfers, or that he did not receive reasonably equivalent value in exchange for each transfer. Further, the Court finds that the Foreclosure Judgment must be treated as twenty-three separate transfers, and more specifically, that each of the Properties was separately transferred to Camden. Thus, the Court will grant partial summary judgment on this issue and the Debtor will be required to establish the value of each property he seeks to recover and show that reasonably equivalent value was not exchanged for that particular property.

## Conclusion

The Debtor's Motion is denied as to the preference count. Camden's Cross-Motion for summary judgment is granted. The transfers of the Properties relate back to the filing of the lis pendens on June 29, 2019, prior to the Preference Period, and thus were not preferences. Therefore, the Debtor cannot prevail on the preference count and judgment will be entered in favor of Camden on that count. The Debtor's Motion is also denied as to the fraudulent transfer count. The Debtor has not established that he was insolvent at the time of the transfer, or that he received less than

reasonably equivalent value for each of the transfers that resulted from the Foreclosure Judgment. Finally, partial summary judgment will be granted on the issue of whether the Foreclosure Judgment was a single, or multiple transfers. Each property transferred was a separate transfer, and the fraudulent transfer analysis must be on a property by property basis.

Dated: November 24, 2020

_____
JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE